KELSO WOODS ASSOCIATION, INC.

v.

**William K. SWANSON, Jr., Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1997.
Decided April 18, 1997.

Evan E. Adair, Erie, for appellant.

Mario P. Restifo, Erie, for appellee.

Before COLINS, President Judge, KELLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

William K. Swanson, Jr., appeals an order of the Erie County Court of Common Pleas which granted in part his counterclaim requesting declaratory judgment in a suit instituted against him by his homeowners' association, Kelso Woods Association, Inc. (the Association).

Mr. Swanson owns fourteen different properties in the Kelso Woods Subdivision, as well as one property in an adjacent subdivision which receives water from the Association. A Declaration of Restrictions recorded in 1962 with the deeds for lots within Kelso Woods includes the following covenants:

1. Acceptance of title to any land in Kelso [Woods] Subdivision shall constitute acceptance of membership in Kelso Association, a non-profit corporation formed or to be formed to provide, maintain, own, regulate and manage property, facilities and services for the use, benefit and enjoyment of all owners ... and to *equitably apportion and assess to and collect from each owner his share of the costs and expenses thereof.*

. . . .

3. Each grantee, by acceptance of title to land in Kelso [Woods] Subdivision, does thereby covenant and agree that he will pay annually ... his *proportionate share of the cost* of providing and maintaining such property, facilities and services, within thirty (30) days of receipt of a bill therefor.

(R.R. at 33a–34a) (emphasis added). When the Association was formed as a non-profit corporation, it enacted by-laws establishing the purposes of the Association, including the following:

To establish such dues, fees and assessments as are required in order that *each member pays his pro-rata share of the expenses* incurred for the upkeep, maintenance and operation of the general facilities and property owned in common by the

corporation and all members, excluding individually owned properties.

(R.R. at 41a) (emphasis added).

The Association provides water to properties in the Kelso Woods Subdivision, which it purchases in bulk from the Erie City Water Authority. Costs of the water system and for the purchase of water are included in general facilities and common property expenses for which assessments may be imposed under the Association's by-laws.

Prior to its fiscal year beginning May 1, 1993, the Association's Board of Directors discovered that it would have to increase annual Association revenues by $2,000.00, to cover increased water purchase costs. To raise the additional revenues, the Board developed a new assessment formula which was challenged by some Association members, including Mr. Swanson, at the Board's April 22, 1993 meeting. At a special meeting on May 5, 1993, the Board approved a general assessment increase of 10% on single-family dwellings. The new assessments were ratified at a regular meeting on May 27, 1993.[1]

Mr. Swanson did not pay the new assessments, and on January 18, 1994, the Association filed suit against him, seeking judgment in the amount of $3,120.00 for the 1993–1994 assessments due and a 10% late payment penalty. Mr. Swanson filed an answer with new matter and a counterclaim for declaratory judgment, challenging the new assessments. In an opinion and order dated May 22, 1996, the trial court granted in part and denied in part the request for declaratory relief, concluding that the new formula for assessing lot owners was within the Board's province and that it could not alter it. Following the denial of his post-trial motions, Mr. Swanson appealed to this Court.

On appeal, Mr. Swanson raises the following issues for our review: 1) whether the trial court erred and abused its discretion in concluding that it could not interfere with the Board's affairs and alter the assessment;

1. In April 1993, the Board also proposed amending the Association's by-laws to limit each property owner to one vote in the Association, regardless of the number of lots owned. The Board solicited votes on the amendment by mailed ballots, and at its June 12, 1993 annual meeting, the Board reported that the amendment had been approved. The trial court ultimately voided the vote and declared the amendment invalid, and the Association has not appealed the decision on this issue.

2) whether the trial court erred and abused its discretion in failing to conclude that the assessments were unreasonable and beyond the Board's authority; and 3) whether the trial court erred and abused its discretion in awarding the Association a judgment in the amount of Mr. Swanson's assessments, plus a late payment penalty. This Court's scope of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Erie Insurance Company/Erie Insurance Exchange v. Flood,* 168 Pa. Cmwlth. 258, 649 A.2d 736 (1994).

Mr. Swanson argues, first of all, that the trial court committed an error of law in concluding that it lacked the authority to review the challenged assessments and make a determination as to whether or not they were lawful. He claims that the court should have exercised a supervisory role over the Association under Section 104 of the Associations Code, 15 Pa.C.S. § 104,[2] which provides:

> [T]he court shall have the powers of a court of equity or chancery insofar as those powers relate to the supervision and control of corporations and other associations.

We agree.

In deciding that it would not overrule the assessments imposed by the Association, the trial court stated: "[a]lthough it is this Court's opinion that the assessments are inequitable, it is not within the Court's power to alter this injustice." (Opinion at 3–4.) In so concluding, the court relied upon our decision in *Mulrine v. Pocono Highland Community Association,* 151 Pa.Cmwlth. 146, 616 A.2d 188 (1992), wherein we stated:

> It is a well established legal principle that courts should not substitute their judgment for that of the directors of a corporation and will not interfere with the internal management of the corporation unless the acts complained of constitute fraud, bad faith or gross mismanagement or are unlawful or ultra vires.

*Id.,* 616 A.2d at 190 (quoting *McDonald v. Lake Hauto Club,* 59 Pa.Cmwlth. 36, 428 A.2d 785, 786 (1981)).

Although in both *Mulrine* and *McDonald* this Court refused to interfere with the decisions of nonprofit associations, we have recognized elsewhere that the discretion of such organizations is not unbridled. In *Quaker City Yacht Club v. Williams,* 59 Pa.Cmwlth. 256, 429 A.2d 1204 (1981), a member of a nonprofit corporation yacht club, who was suspended for nonpayment of dues, sought to enjoin the suspension because the club had not followed the procedures set forth in the Nonprofit Corporation Law of 1972 for such suspensions. The trial court granted the injunctive relief, declaring the member's suspension invalid. We affirmed this decision, citing *McDonald,* but concluding as follows:

> Although the courts are reluctant to interfere in the affairs of private corporations . . . the courts will not stand idly by when under the pretext of following "club rules" the laws of Pennsylvania have been violated.

*Id.,* 429 A.2d at 1206.

In the case at bar, Mr. Swanson has not merely challenged the amount or reasonableness of the assessments, but alleges in his request for declaratory judgment that the new assessment formula was an improper exercise of the Association's authority and beyond his obligations as a lot owner. He argues that the Association exceeded its authority under the subdivision restrictions, which require purchasers of lots to pay only a "proportionate share" of the Association's common expenses, and its authority under the Association's by-laws, which authorize the Association to establish assessments so each member pays only his "pro-rata share" of the expenses. We would note further that, pursuant to Section 5544(a) of the Nonprofit Corporation Law of 1988, "[a] nonprofit corporation may levy dues or assessments, or both, on its members, *if authority to do so is conferred by the bylaws, subject to any limitations therein imposed.*" 15 Pa.C.S. § 5544(a). Under this provision, if an as-

---

2. This provision is made applicable to nonprofit corporations, such as the Association, under Section 5104 of the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 5101–6162.

sessment is beyond the authority conferred by the by-laws, and not in accordance with any limitations imposed in those by-laws, the assessment violates the Nonprofit Corporation Law.

■ We hold that the trial court, when presented with allegations concerning the legality and propriety of a nonprofit association's imposition of assessments, may review that decision to ensure that it is in accordance with not only Pennsylvania law, as in *Quaker City*, but also the by-laws of the association. This conclusion does not conflict with our prior decisions in *Mulrine* or *Mc-Donald*, and is wholly consistent with Section 104 of the Associations Code, 15 Pa.C.S. § 104, which grants equitable powers to a court with regard to the supervision and control of associations.

As for the merits of the new assessments, which the trial court did not address beyond summarily concluding that they were "inequitable," Mr. Swanson argues that it was improper for the Association to have based the increased assessments not upon each property owner, but upon each lot and each unit on each lot. The new formula established base assessments for what it deemed single-family dwellings of $165.00 (a 10% increase) and adopted classifications for "motel rooms" and "additional apartments" subject to the base assessment plus fixed additional charges for each unit (one-half the base for each motel room and two-thirds the base for each additional apartment). These classifications affected two of Mr. Swanson's properties, one lot with two cottages and another lot which was deemed to contain six units (an efficiency apartment/office, two one-bedroom apartments, a two-bedroom apartment, a one-room storage building and a garage).[3]

Mr. Swanson claims that there was no evidence that the new assessment charged lot owners proportionately for water costs, since water usage was not metered. As he argues, while water purchase costs is the only factor cited by the Association as a basis for its "motel room" and "additional apartment" assessments, the Association admits that it had no information concerning occupancy or consumption of water at any property. (R.R. at 92a.) Of course, on remand, the trial court will have to resolve this issue and determine whether the new assessment formula requires property owners to pay a proportionate and pro-rata share of the water costs.

In conclusion,[4] we hold that the trial court erred as a matter of law in refusing to review the Association's new assessment formula. We, accordingly, vacate the judgment entered against Mr. Swanson and remand the case to the trial court for further proceedings consistent with this opinion.

## ORDER

AND NOW, this 18th day of April, 1997, we hereby vacate the May 22, 1996 judgment entered by the Court of Common Pleas of Erie County and remand for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

COLINS, President Judge, dissents.

---

3. According to Mr. Swanson, prior to the 1993 assessment, all property owners were assessed equally. Under the new method, most property owners only experienced a 10% increase, while Mr. Swanson's overall increase was 33%. (R.R. at 94a.)

4. Mr. Swanson also argues that the trial court erred in awarding the Association a judgment including a late payment penalty. He claims that a late payment penalty is a "fee" which can only be assessed in accordance with the by-laws, and that the by-laws in this case confer no such authority. Although the issue is rendered moot by our decision, we note that because the Association is authorized by both the deed restrictions and the by-laws to collect fees, that it has the authority to enforce the payment of such by imposing late payment penalties.