**KELSO WOODS ASSOCIATION, INC., Appellant,**

v.

**William K. SWANSON, Jr. (Two Cases.)**

**Kelso Woods Association, Inc.**

v.

**William K. Swanson, Jr., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.
Decided May 30, 2000.

Mario P. Restifo, Erie, for appellant.

Evan E. Adair, Erie, for appellee.

Before DOYLE, President Judge, FRIEDMAN, J., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Kelso Woods Association, Inc. (Association), an association of homeowners in the Kelso Woods Subdivision, and William K. Swanson, Jr. (Swanson), a subdivision homeowner and Association member, cross-appeal from an order of the Court of Common Pleas of Erie County (trial court), granting in part and denying in part Swanson's Request for Declaratory Judgment filed against the Association, and entering judgment in favor of the Association against Swanson in the amount of his assessment arrearages.[1] In addition, the Association appeals from the trial court's denial of its post-trial motion with respect to a separate, but related, order of

---

1. The trial court's order was made final by the prothonotary's entry of judgment on July 15, 1999, pursuant to Pa. R.C.P. No. 227.4(1)(b).

the trial court granting Swanson's Motion for Enforcement of Order and for Finding of Contempt filed against the Association.

## Background

Both orders now on appeal arose in connection with actions taken by the Association in April 1993. The first of these actions occurred when the Association, faced with rising water costs, found it necessary to raise the assessments of its homeowner members and to change the formula by which it assessed property owners to pay for common facilities.[2] To this end, the Association (1) increased the base assessment on each lot by ten per cent, from $150 to $165, and eliminated rate reductions for additional buildings on a single lot;[3] (2) distinguished between motel rooms and additional apartments, assessing the former at one-half the base assessment rate and the latter at two-thirds the base assessment rate; and (3) increased assessments on lots outside the subdivision that received only water from the Association. Also, in April of 1993, the Association voted to amend its bylaws, reducing its members' voting power from one vote per lot to one vote per member, regardless of the number of lots owned. (8/13/98 trial court op., voting rights, at 3.)

Swanson owns fourteen lots in the Kelso Woods Subdivision and one lot in an adjacent subdivision, all of which receive water from the Association. When Swanson refused to pay the increased assessments, the Association sued him for nonpayment of the assessments. (8/13/98 trial court op., assessments, at 7.) Swanson responded by filing a counterclaim, seeking declaratory judgment against the Association on two grounds. First, Swanson contended that the assessment was invalid because the Association exceeded its authority both under the subdivision's Declaration of Restrictions, which require owners to pay only their "proportionate share" of assessments, and under the Association's bylaws, which limit the Association's authority to assess members only to their "pro rata share" of the common expenses. In addition, Swanson contended that the Association's subsequent amendment of its bylaws to reduce its members' voting power was invalid because the vote to amend was (a) taken outside of a regular or special meeting; (b) contrary to the deed restrictions and bylaws; and (c) violative of property owners' due process rights. (S.R.1a–2a.)

In a May 23, 1996 decision,[4] the trial court invalidated the Association's amendment to its bylaws affecting members' voting rights. In doing so, the trial court found the vote, which was conducted via mail-in ballots, was prohibited by law[5] and that the Association acted improperly by failing to obtain the consent of those members who owned multiple lots. (R.R. at 12a–17a.) With regard to the validity of the assessments imposed by the Association, the trial court refused to review the matter. The trial court stated that, although it believed the new assessment formula was inequitable and unjust, the trial court was powerless to alter the formula absent fraud, bad faith or gross mismanagement by the Association's board of directors. (R.R. at 14a–15a.) Significantly, the Association did not appeal from that part of the trial court's decision invalidat-

2. As part of its responsibilities, the Association assesses homeowner members for expenses to maintain common facilities. Because none of the homes had individual water meters, water costs were assessed as part of the subdivision's common facilities.

3. Under the prior assessment formula, additional buildings constructed on a lot were assessed at the reduced rate of an additional $82.00 each. (8/13/98 trial court op., assessments, at 4.) Under the new assessment formula, the Association eliminated this rate re-

duction and, instead, assessed additional buildings at the full assessment rate. (8/13/98 trial court op., assessments, at 5.)

4. Although the trial court's order is dated May 22, 1996, it was docketed on May 23, 1996. (O.R. # 4 at 2.)

5. We note that in 1990 the Nonprofit Corporation Law of 1988, was amended to permit voting by mail. See 15 Pa.C.S. § 5758(b).

ing the bylaw amendment on member voting rights.[6] However, Swanson appealed to this court from that portion of the trial court's opinion concluding that it was powerless to review the Association's new assessment formula.

While Swanson's appeal was pending in this court, on September 7, 1996, the Association again voted to amend its bylaws to restrict members' voting rights to one vote per owner regardless of the number of lots owned. In doing so, the Association did not obtain Swanson's consent. The Association took this action in violation of the unappealed portion of the trial court's May 23, 1996 order regarding amendment of the bylaws as to members' voting rights. In response to the Association's action, Swanson filed a Motion for Enforcement of Order and for Finding of Contempt against the Association.

We considered Swanson's appeal in *Kelso Woods Ass'n., Inc. v. Swanson,* 692 A.2d 1132 (Pa.Cmwlth.1997)(*Kelso I* ), and we held that, because the trial court had the power to supervise and control the Association, the trial court erred as a matter of law in refusing to review the new assessment formula. As a result, we vacated the trial court's judgment and remanded the case, directing the trial court to determine whether the new assessment formula requires property owners to pay a proportionate and pro-rata share of the expenses. *Id.*

On August 13, 1998, the trial court issued the two opinions that are the subjects of the instant appeals. The first opinion dealt with the Association's new assessment formula. The trial court resolved

the remand issues from *Kelso I,* which relate to Swanson's request for declaratory judgment, and issued an order invalidating certain portions of the assessment formula but entering judgment against Swanson for arrearages.[7] In the second opinion, the trial court dealt with Association members' voting rights and issued an order granting Swanson's Motion for Enforcement of Order and for Finding of Contempt.[8] We first address the parties' cross-appeals from the trial court's order regarding the Association's new assessment formula.

## Assessment Formula

In considering on remand whether the Association's assessments were based on a pro rata and proportionate share of the water costs, the trial court made the following determinations:

First, the trial court determined that the Association's ten per cent increase in the base assessment and the higher assessments on additional buildings on each lot were rational and based upon a pro rata and proportionate share. (8/13/98 trial court op. at 8–9.) The trial court found it reasonable to assume that a lot containing two livable buildings would use twice as much water as a lot with only one building and that the inhabitants of additional buildings on a lot would make more use of the roads, lawns and other common areas in the subdivision than if the lot contained only one building. Although Swanson argued that some of his properties are not rented out on a year-round basis, the trial court pointed out that they are **capable** of being occupied year-round.[9] The trial

6. Indeed, in *Kelso Woods Ass'n., Inc. v. Swanson,* 692 A.2d 1132, 1133 n. 1 (Pa.Cmwlth. 1997), we remarked that "the Association ha[d] not appealed the decision on this issue."

7. Although both parties filed post-trial motions, the trial court did not decide the motions within 120 days. Therefore, the prothonotary entered judgment upon the Association's Praecipe for Entry of Judgment under Pa. R.C.P. No. 227.4(1)(b),

(O.R.# 72), and the parties filed cross-appeals.

8. The Association filed a post-trial motion, which the trial court denied on May 25, 1999. (O.R.# 57.) The Association filed a timely notice of appeal.

9. The Subdivision began as a seasonal resort-type community but evolved over the years into a development that is more year-round

court also specifically found that it would be unreasonable to require the Association to install individual water meters due to the advanced age of the water lines.

Second, the trial court found that the Association made an unreasonable distinction between "motel room" and "additional apartment" for purposes of the assessment. In fact, the trial court noted that the Association's former president testified that there was no difference between the benefits each receives. Thus, the trial court concluded that assessing additional apartments at two-thirds the base rate while assessing motel rooms at one-half the base rate was neither pro rata nor proportionate assessment and directed that, under the bylaws, the Association may not charge more than one-half the base assessment rate for either type of unit. (8/13/98 trial court op., assessments, at 11.)

Third, the trial court found that the $165 assessment imposed on Swanson's garage was unreasonable. The trial court reasoned that no assessment may be imposed on a building that is unfit for human habitation or lacks plumbing because such a structure does not consume water or other services. (8/13/98 trial court op., assessments, at 11.)

Fourth, the trial court considered the water-only assessment of Swanson's lot in an adjacent subdivision.[10] Finding that water comprises only about thirty per cent of the Association's expenses, the trial court ruled that the $150 assessment of

Swanson's adjacent lot was grossly disproportionate to both Kelso Woods Subdivision lots, which are assessed at one-third of the $165 base rate, and to the benefit received. However, the trial court noted that the Association's bylaws and deed restrictions do not apply to lots outside the Kelso Woods Subdivision. (8/13/98 trial court op., assessments, at 12.) Thus, although the trial court believed that it was inequitable for the Association to assess this lot at ninety-one per cent of the base rate, the trial court concluded that it was within the Association's discretion to charge a premium for the use of its water lines – but in no event more than one-half the base rate. (8/13/98 trial court op., assessments, at 12–13.)

Finally, the trial court calculated Swanson's assessment arrearage and ordered Swanson to pay the Association "$3,070.80 for each year that he is delinquent, plus interest." (8/13/98 trial court op., assessments, at 14; Order at 3.)

■■■ The Association now appeals [11] the trial court's decision with respect to the second and fourth of the above stated determinations,[12] arguing that the trial court erred in substituting its judgment for that of the Association's board of directors absent a finding of fraud, bad faith or gross mismanagement. We disagree.

In *Kelso I*, the Association made, and we rejected, the identical argument. We explained that courts have "equitable powers...with regard to the supervision and

and permanent in nature. (8/13/98 trial court op., voting rights, at 2.)

10. This property, being outside the Kelso Woods Subdivision, receives only water services from the Association. (8/13/98 trial court op., assessments, at 5.)

11. Our scope of review in an action for declaratory judgment is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Conley Motor Inns, Inc. v. Township of Penn*, 728 A.2d

1012 (Pa.Cmwlth.), *appeal denied*, 560 Pa. 731, 745 A.2d 1225 (1999).

12. At the hearing on the assessments, the Association's attorney indicated that the garage assessment would be deleted from the case. The Association's attorney stated, "Your Honor, if Mr. Swanson or [his attorney] tell us that [the garage] cannot be occupied because of a lack of water, it will be deleted." (R.R. at 87a–88a.) Nevertheless, the Association included the garage assessment in its appeal to this court. However, at oral argument, the Association withdrew its appeal with respect to the garage assessment.

control of associations," *Kelso I*, 692 A.2d at 1135, and, thus, held that courts may review the "legality and propriety of a nonprofit association's imposition of assessments" and may review assessments to ensure that they are "in accordance with not only Pennsylvania law...but also the by-laws of the association." *Id.* Now, in an attempt to circumvent our decision in *Kelso I*, the Association argues that, when this court remanded the case to the trial court, although we "correctly held that the lower court does have a right to review the Association's formula for assessments," that "does not mean that the [trial] court should set the assessments, or hold them to be unlawful" unless there is evidence of fraud, bad faith or gross mismanagement.[13] (Association's brief at 12.)

The Association's interpretation is an attempt to contort and mischaracterize *Kelso I*, in which we stated unequivocally that the trial court could review the assessment **even in the absence of fraud, bad faith or gross mismanagement.** *Kelso I* is not only the law under the doctrine of stare decisis, it is also the law of the case. *See City of Philadelphia v. Public Utility Com'n.*, 720 A.2d 845, 849 (Pa.Cmwlth. 1998), *appeal denied*, 560 Pa. 689, 742 A.2d 677 (1999) (holding that upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court). In *Kelso I*, we specifically directed the trial court on remand to determine whether the new assessment formula required property owners to pay pro rata and pro-portionate assessment shares. The trial

court did not err in following this court's directive when it found that portions of the Association's new assessment formula contravened the Association's bylaws and invalidated the offending assessments.

 ■ In his cross-appeal, Swanson attacks the trial court's decision on several grounds. First, with respect to the assessments on additional buildings on a single lot, Swanson contends that the only distinction between the benefits provided to these lots and to lots with only one building is in the amount of water supplied.[14] Swanson maintains that merely because the Association supplies these lots with a greater amount of water, this by itself does not justify a second full assessment on the additional buildings; instead, it merely justifies a water-only assessment, not exceeding one-half the base assessment for additional dwelling units. (Swanson's brief at 25.) We disagree.

At the hearing before the trial court, the Association's treasurer testified that the Association owns, plows, maintains and pays taxes on the roads.[15] (N.T. 5/4/98 at 25, R.R. at 96a.) The treasurer also testified that the Association maintains the basketball courts, (N.T. 5/4/98 at 26, R.R. at 97a), maintains the street poles and lights and pays for the electricity for the street lights, maintains the common area lawns, including tree removal, (N.T. 5/4/98 at 27, R.R. at 98a), maintains liability insurance for the playground, pays real estate taxes and attorney fees, (N.T. 5/4/98 at 28, R.R. at 99a), and pays the salaries for the board of directors. (N.T. 5/4/98 at

---

13. The Association relies on *Hess v. Barton Glen Club, Inc.*, 718 A.2d 908 (Pa.Cmwlth. 1998), *appeal denied*, 558 Pa. 623, 737 A.2d 745 (1999), but that case is of no assistance to the Association. In fact, portions of *Hess* support the view that courts may review the validity of assessments to ensure that they do not conflict with deed restrictions or covenants. Indeed, this court stated that, even where covenants are silent, an association may assess owners a "**proportionate share** of the costs of maintaining all the common areas...." *Id.* at 913 (emphasis added).

14. In support of this argument, Swanson claims that the trial court disregarded the unrebutted testimony of the Association's president, who stated that the existence of an additional living unit on a lot made no difference as to benefits received from the Association other than water. (Swanson's brief at 25; S.R. at 9a.)

15. Even Swanson agreed that the Association pays taxes on the roads. (N.T. 5/4/98 at 44, R.R. at 115a.)

31, R.R. at 102a.) In fact, water is responsible for only about one-third of the Association's expenses. (N.T. 5/4/98 at 32, 33, 37, R.R. at 103a, 104a, 108a.) Because inhabitants of additional buildings make use of all these common facilities, Swanson's appeal on this ground is meritless.

Swanson also argues that, in rendering its decision, the trial court failed to consider the fact that new public waterlines are scheduled to be constructed before May 1, 2000 and that, as a result, the Association will no longer be providing water to its properties. (Swanson's brief at 27.) However, a review of the trial court's opinion reveals that the trial court did, in fact, consider the new waterlines; the trial court explained that its decision

> applies specifically to the assessment scheme as it exists in this litigation. Should the Association elect to replace the water lines or adopt a more precise and comprehensive approach to the measurement of water consumption in the future, this Court's Order may be overridden so long as the Association is in compliance with its bylaws.

(8/13/98 trial court op., assessment, at 11 n. 7.) Accordingly, Swanson's second argument is also meritless.

Swanson's request for a remand on the matter of arrearages owed, however, is another matter. Swanson seeks a remand so that the trial court may receive additional evidence to determine the amount of assessments paid by Swanson since 1995 and thus properly calculate the amount that Swanson still owes. In response to Swanson's appeal, the trial court agreed that it improperly calculated the amount of Swanson's delinquency and requested that we remand the issue of proper calculation of the assessment arrearages for further findings. (Trial court's Pa. R.A.P.1925(a) Statement, O.R. # 13.) Accordingly, we vacate that portion of the trial court's August 13, 1998 opinion ordering Swanson to

pay the Association "$3,070.80 for each year that he is delinquent, plus interest." (8/13/98 order, assessments, at 14.) We also remand this matter to the trial court so that it may make further findings and properly calculate Swanson's assessment arrearages.

### Voting rights

Next, we consider the Association's appeal from the trial court's August 13, 1998 order granting Swanson's Motion for Enforcement of Order and for Finding of Contempt. As stated previously, the trial court, by order of May 23, 1996, invalidated the Association's action amending its bylaws to restrict members' voting rights to one vote per member as opposed to one vote per lot, and, although the Association did not appeal the trial court's order, the Association subsequently repeated the invalidated action. In granting Swanson's motion to hold the Association in contempt, the trial court relied upon *Schaad v. Hotel Easton Co.*, 369 Pa. 486, 492, 87 A.2d 227, 230 (1952) for the proposition that bylaw "provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired." The trial court held that the right to vote is a property right and that the Association's bylaws acted as a contract between Swanson and the Association that could not be amended absent Swanson's consent.[16] Accordingly, the trial court: (1) declared the vote to amend the by-laws void as a violation of Swanson's property rights; (2) ordered the Association to restore the bylaw to its prior language; and (3) ordered the Association to amend its bylaws by adding a new subsection (b) to Art. VIII providing that "any amendment of these bylaws pertaining to voting, property, or contractual rights of members and owners of property within the Subdivision shall not be effective without the individual consent of all

---

**16.** Because Swanson was in arrears on his assessments, he was not entitled to vote on the amendment. Nevertheless, his consent, as well as consents of all other multiple property owners, was required. (8/13/98 trial court op., voting rights, at 6.)

persons whose interests are thereby impaired." (8/13/98 trial court op., voting rights, at 7–8; 8/13/98 trial court order, voting rights, at 1–2.)

 On appeal,[17] the Association contends that the trial court erred in invalidating its bylaw amendment to reduce its members' voting rights. Swanson counters that res judicata bars the Association's appeal because the Association did not appeal from the trial court's May 23, 1996 order, which decided this issue. The Association, however, contends that that part of the trial court's May 23, 1996 opinion is merely dictum because the voting rights issue was not before the trial court. (*See* Association's reply brief at 1.) We disagree and conclude that res judicata bars the Association's appeal.

The issue regarding voting rights was raised by Swanson in his Counterclaim and Request for Declaratory Judgment, when he alleged, "The Board's proposed bylaw amendments were contrary to recorded restrictions, Articles I and II of the bylaws **and the due process rights of persons owning properties in the subdivision.**" (S.R. at 2a ¶42.) (Emphasis added.) Moreover, at the August 23, 1995 hearing on this issue, Swanson's attorney made clear his position:

One [sic] the contention is that the attempt to amend bylaws by ballot is verboten under the bylaws and the nonprof-

it corporation law, so procedurally it was wrong. But on a substantive basis, and I detail it in the memorandum, you know, ad nauseum, **the law is that you cannot take away fundamental property or contractual rights of members, vis-à-vis members, even through bylaw amendment, unless the people whose rights are affected agree.** You can make managerial, typical procedural changes through a majority vote, **but you can't [do] this because it's a contract.** So the second thing is you just fundamentally cannot do that.

(R.R. at 65a.) (Emphasis added.) Thus, the issue was before the trial court.

The Association also contends that the trial court's May 23, 1996 decision is dictum because, even though that **opinion** dealt with the issue,[18] the trial court's **order** "itself did not include any such language or holding, and the Association agreed with the **order** as entered; therefore, the Association did not appeal from the order." (Association's reply brief at 1.) (Emphasis added.) The trial court's **order** stated:

Specifically, the special meeting of May 5, 1993 is declared void. The board of directors' actions in mailing ballots is unauthorized by the bylaws and is void as well. **Furthermore, the amendment to the by-laws which changed the vot-**

---

**17.** Our scope of review when considering an appeal from a contempt order is limited to a review of whether the trial court abused its discretion or committed an error of law. *Lower Mount Bethel Township v. Stine,* 686 A.2d 426 (Pa.Cmwlth.1996).

**18.** The opinion stated:

The Court is additionally persuaded by considering the effect of the changed bylaw. The right to vote in the association is a property right that vests in each member upon the purchase or acquisition of title to property located therein. By accepting title to the property, the owner entered into a contractual relationship with the association, a non-profit corporation, since the bylaws act as a contract amongst members.

*Hornsby v. Lohmeyer,* 364 Pa. 271, 72 A.2d 294 (1950). Our Supreme Court has held that "Provisions [in by-laws] affecting property or contractual rights cannot be repealed or altered without the consent of parties whose interests are thereby impaired." *Schaad v. Hotel Easton Co.,* 369 Pa. 486, 87 A.2d 227 (1952); *Moosic Lakes Club v. Gorski,* 402 Pa. 640, 168 A.2d 343 (1961). The association's attempt at amending the bylaws to alter each member's voting right from one vote per lot to one vote per person is not only inequitable but illegal. Without the consent of those persons whose interests are affected by such amendment, the bylaws legally cannot be amended.

(5/23/96 trial court op. at 4–5, R.R. at 15a–16a.)

**ing rights of the members was also illegal.**

(R.R. at 17a.) (Emphasis added.) Contrary to the Association's claim, the trial court's order did address the voting rights issue.

Finally, the Association argues that Swanson has waived his right to claim that the trial court's May 23, 1996 order is res judicata because Swanson only raised the issue of res judicata for the first time on appeal, without providing the Association an opportunity to litigate the issue or the trial court an opportunity to decide the issue. (*See* Association's reply brief at 2.) Again, we disagree.

Swanson's Motion for Enforcement of Order and for Finding of Contempt could not have made it clearer that Swanson was asking the trial court to hold the Association in contempt for violation of the trial court's May 23, 1996 order. The trial court was equally pellucid when it held the Association in contempt of its May 23, 1996 order because the Association "undertook to adopt the same bylaw amendment in a manner which clearly has been prohibited by this Court." (8/13/98 trial court op., voting rights, at 6.) Thus, the Association's contention that this issue was not raised below is meritless.

Because the Association did not file a timely appeal from the trial court's May 23, 1996 order, the trial court's decision became res judicata. *See Morgan Guaranty Trust Co. of New York v. Mowl,* 705 A.2d 923 (Pa.Super.), *appeal denied,* 556 Pa. 693, 727 A.2d 1121 (1998). Accordingly, the Association's appeal on the ground that the trial court erred in invalidating its bylaw changing members' voting rights without Swanson's consent is barred.

## Conclusion

For the foregoing reasons, we vacate that portion of the trial court's order directing Swanson to pay the Association $3,070.80, plus interest, for each year he is in arrears on his assessment payments, and we remand this matter to the trial court to take additional evidence, as needed, and to make additional findings of fact and conclusions of law regarding Swanson's arrearage. We affirm the trial court's orders in all other respects.

## O R D E R

AND NOW, this 30th day of May, 2000, the order of the Court of Common Pleas of Erie County (trial court), dated May 25, 1999 (voting rights) is hereby affirmed. The trial court's order of August 13, 1998 (assessments), as made final by the entry of judgment pursuant to Pa.R.C.P. No. 227.4(1)(b), is hereby affirmed in all respects with the exception that we vacate that portion of the order that Swanson pay the Association "$3,070.80 for each year that he is delinquent, plus interest," and remand this matter to the trial court so that it may take additional evidence, as needed, and make additional findings of fact and conclusions of law limited to determining Swanson's arrearages.

Jurisdiction relinquished.