IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugh Reilly                              :
                                         :
            v.                           :
                                         :
Upper Moreland Police Department         :
and Layla Cruz,                          :      No. 140 C.D. 2024
                    Appellants           :      Submitted: June 3, 2025


BEFORE:     HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE MATTHEW S. WOLF, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                                FILED: July 7, 2025


            Upper Moreland Police Department (UMPD) and Layla Cruz (Officer
Cruz) (together, Appellants) appeal from a November 20, 2023, order of the Court
of Common Pleas of Montgomery County (trial court).  The trial court denied
Appellants' motion for summary judgment against Hugh Reilly (Reilly).  Upon
review, we vacate and remand to the trial court for reconsideration of its order in
accordance with this opinion.


                   **I. Factual and Procedural Background**

            On July 29, 2020, Reilly filed a *pro se* complaint in the trial court under
42 U.S.C. § 1983[1] (Section 1983) asserting that as a result of a July 29, 2018,

---

[1] "Section 1983 does not create substantive rights but, rather is the vehicle for vindicating
rights conferred in the United States Constitution or in federal statutes."  *Jae v. Good*, 946 A.2d
802, 809 (Pa. Cmwlth. 2008) (citation omitted).

incident, Officer Cruz, a police officer with UMPD, falsely arrested him and violated his civil rights. Original Record (O.R.) at 13.[2] Reilly also asserted that the UMPD violated his civil rights by failing to properly train and supervise Officer Cruz prior to the incident. *Id.* at 15. Appellants filed preliminary objections, which the trial court denied. *Id.* at 67. Appellants then filed an answer with new matter denying Reilly's allegations, asserting "all common law, statutory and qualified immunity to which [Appellants] may be entitled," and averring that Reilly failed to state a claim for Appellants' liability. *Id.* at 74-79. On July 24, 2023, Appellants filed a motion for summary judgment asserting that Officer Cruz was entitled to qualified immunity, that Reilly failed to establish that Officer Cruz lacked probable cause to arrest him, and that Reilly's claims against UMPD were derivative of his claims against Officer Cruz and could not stand once those claims failed. *Id.* at 121-34.

The record includes Officer Cruz's affidavit of probable cause regarding the incident. O.R. at 375. She responded to a reported domestic incident in progress at the marital home of Reilly and his then-wife Annmarie Reilly (Annmarie). *Id.* Montgomery County's dispatcher advised the UMPD that Annmarie had a Protection from Abuse order (PFA) against Reilly, who left the scene before Officer Cruz arrived. *Id.* The PFA was to run from January 2, 2018, through January 2, 2020. *Id.* at 149. It stated that Reilly was not to abuse, harass, stalk, or threaten Annmarie, or to contact her by telephone or any other means, including through third persons. *Id.* Reilly was "evicted and excluded" from the marital home and had "no right or privilege to enter or be present on the premises[.]" *Id.*

---

[2] Original Record (O.R.) references are to electronic pagination.

2

Officer Cruz stated in the affidavit that Annmarie told her that Reilly and their son came to the house "to retrieve property," but there was no agreement between the spouses to meet that day for a property exchange; that Reilly was not allowed on the property due to the PFA but had "parked partially into the driveway to prevent [Annmarie] from leaving"; that Reilly "sent their son as a third party" into the house to get the family dogs and then again to get a laptop[3]; and that when Annmarie "attempted to get the laptop" from [Reilly's] vehicle, he "forcibly held the door closed," then left "with possession of the laptop." O.R. at 375.

Reilly turned himself in later that day on an arrest warrant procured by Officer Cruz. O.R. at 381. On September 14, 2018, Judge Daniele of the trial court, who had signed the PFA, held proceedings on criminal charges lodged against Reilly for violation of the PFA. *Id*. at 383-86. After the parties stipulated that Reilly did not park on or enter the property during the incident, Officer Cruz did not testify. *Id*. at 403-04. The judge concluded that the prosecutor had not shown Reilly's guilt of a PFA violation beyond a reasonable doubt. *Id*. at 412.

In this litigation, Annmarie and Reilly gave depositions presenting their versions of the incident. O.R. at 416-532 & 877-1049. Reilly testified that he and their son went to the marital residence to drop off a guitar Reilly borrowed from one of their daughters and to pick up the family dogs. *Id*. at 961. His son went inside to return the guitar and came out with the computer, which the son put into the back seat; the son went back into the house and came out with a large speaker for the computer, at which point Reilly got out of the car and opened the trunk for the speaker. *Id*. at 985. When Annmarie and her boyfriend drove up, he got in his car.

---

[3] The record confirms that the computer was a desktop computer, not a laptop. O.R. at 388.

*Id*. at 986. Annmarie pounded on his car's hood and tried to open a car door to get the computer. *Id*. at 986-87. Reilly felt threatened by Annmarie's boyfriend, so he drove away with his son to his parents' home, where he was living at the time. *Id*. at 988-89 & 998.

Sometime later, Officer Cruz called him on his cell phone, told him that he was not allowed to go to the marital property, that an arrest warrant had been issued, and that he could come down to the station or he would be arrested at his parents' home. O.R. at 1000-01 & 1006. His lawyer advised him to turn himself in, which he did. *Id*. at 1001. He believed that he did nothing wrong because he was allowed to go to the property for pickups and drop-offs as long as he did not go on the property. *Id*. at 1001-03.

Annmarie testified that she got out of the car and told Reilly that he was not allowed to take the computer, then tried to hold onto the car door but failed to stop him from driving away. O.R. at 453-54. Her boyfriend called the police and Officer Cruz, whom she had not met before, showed up. *Id*. at 455. She did not remember exactly what she told Officer Cruz other than she believed Reilly was not allowed to be there that day; her boyfriend told the dispatcher that there was a PFA. *Id*. at 455-57 & 485. She believed Reilly sent their son into the house to get the computer so he could see her personal information and communications with her lawyer on it even though their divorce lawyers had stipulated that Reilly could not take the computer. *Id*. at 457-58, 486, 507 & 520. She acknowledged that Reilly was not on the property during the incident. *Id*. at 516-17. She stated that any inconsistencies were probably due to her state of mind at the time based on prior incidents with Reilly, his family, and their son. *Id*. at 473-74. She acknowledged

4

that Reilly was not on the property during the incident but believed he had in fact violated the PFA even though he was found not guilty. *Id*. at 516-17 & 532.

On November 20, 2023, the trial court issued an order denying Appellants' motion for summary judgment; the order included no explanation or rationale. O.R. at 1131. Appellants appealed to the Superior Court, which ultimately transferred the matter to this Court. On February 28, 2024, the trial court issued its opinion. Reproduced Record (R.R.) at 506a-18a. The trial opinion stated that the trial court now "believe[d] the order was erroneously entered and Appellants are entitled to judgment in their favor" and recommended that this Court reverse the November 2023 order. *Id*. at 507a & 518a.

## II. Issues

Appellants assert that the trial court's order is an appealable collateral order. Appellants' Br. at 17-21. On the merits, they aver that summary judgment was appropriate because evidence showed that Officer Cruz had probable cause to arrest Reilly on the date of the incident and, therefore, no constitutional violation occurred and she established qualified immunity from Reilly's suit. *Id*. at 23-28. They also maintain that because no underlying constitutional violation occurred, summary judgment was appropriate on Reilly's derivative municipal liability claim against UMPD. *Id*. at 29-30.

### III. Discussion

### A. Appealability of Trial Court's November 3, 2023, Order

An appeal "may be taken as of right from a collateral order of a trial court[.]"[4] Pa.R.A.P. 313(a). A collateral order is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Tracking that language, the test is as follows: "an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 370 (Pa. 2021).

With regard to separability, an order is separable from the main cause of action if "it can be resolved without an analysis of the merits of the underlying dispute" and is "entirely distinct from the underlying issue in the case." *Brooks*, 259 A.3d at 371. We conduct "a practical analysis recognizing that some potential interrelationship between merits issues and the question sought to be raised in the interlocutory appeal is tolerable." *Id.* at 371-72. In civil matters, which includes Section 1983 claims, immunity defenses are separable because they "conclusively determine whether the defendant is entitled to immunity from suit[,]" which "is both important and completely separate from the merits of the action[.]" *Commonwealth v. Pownall*, 278 A.3d 885, 905 n.18 (Pa. 2022) (distinguishing civil cases with immunity defenses from criminal case where police officer's defense of justified use of deadly force in a shooting was deemed insufficiently separable from his

---

[4] This distinguishes collateral appeals from other interlocutory orders that require the appellant to seek permission to appeal. *See* Pa.R.A.P. 312.

underlying guilt or innocence of murder to support appealability of interlocutory order regarding use at trial of standard jury instruction on peace officer justification defense).

With regard to the importance of the right and irreparable harm, immunity defenses generally implicate rights too important to evade review before final judgment and which would be irreparably lost if review is postponed until after final judgment because immunity defenses protect public entities and actors, like police officers, from the expense and time required to defend against lawsuits, not just the prospect of liability. *Brooks*, 259 A.3d at 372-74.

Here, the trial court did not directly address appealability in its February 2024 opinion. However, the court's position that its November 2023 order denying Appellants' motion for summary judgment was incorrect and should be reversed implies that the trial court believed its order was immediately appealable. *See* R.R. at 518a.

Appellants assert that as in *Brooks*, the issue of Officer Cruz's eligibility for qualified immunity is separable because it can be determined without consideration of the merits of Reilly's underlying suit, implicates a right deeply rooted in public policy going beyond the litigation at hand, and claims protections that would be lost if review is postponed until after final judgment. Appellants' Br. at 18-22. Reilly does not address this issue.

We agree with Appellants. Although *Brooks* pertained to an underlying negligence action as opposed to Reilly's assertion of constitutional torts, and the government entity in that case asserted sovereign rather than qualified immunity, the legal analysis and conclusion are the same. Officer Cruz's claim of qualified immunity is distinct and separable from whether Reilly has shown that he was

7

wrongly arrested on July 29, 2018. The importance of the right of public officials to qualified immunity, assuming it is validly claimed, is similar to the basis discussed in *Brooks* for sovereign immunity in that it is longstanding, wide-reaching, and protects public actors' ability to perform their duties "without fear of litigation and unlimited damages." 259 A.3d at 372-73. Lastly, a valid claim of qualified immunity operates similarly to the sovereign immunity at issue in *Brooks* in that it protects public actors not just against exposure to liability, but from the expense and effort needed to defend against lawsuits in the first place. *Id*. at 373-74. As such, the trial court's November 2023 order is an appealable collateral order.

## B. Trial Court's Change of Position Between its Order Denying Appellants' Motion for Summary Judgment and its Rule 1925(a) Opinion

Section 706 of the Judicial Code states: "An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa.C.S. § 706.

Appellants' motion for summary judgment asserted that Officer Cruz was entitled to qualified immunity, that Reilly failed to establish that Officer Cruz did not have probable cause to arrest him, and that Reilly's claims against UMPD were derivative of his claims against Officer Cruz and could not stand once those claims failed. O.R. at 121-34. The trial court's November 2023 order denied Appellants' motion for summary judgment with no explanation. R.R. at 506a. Appellants' December 2023 statement of the errors complained of on appeal (Rule 1925(b) statement) stated that although the trial court's order provided no reasoning,

Appellants sought appellate review to the extent the trial court rejected Officer Cruz's eligibility for qualified immunity. O.R. at 1139-40. The record reflects that no further proceedings or discovery took place after the trial court's November 2023 order.

When the trial court issued its February 2024 opinion, it stated that it now "believe[d] the order was erroneously entered and Appellants are entitled to judgment in their favor." R.R. at 507a. The court explained that based on the evidence, Officer Cruz had probable cause to arrest Reilly on the date of the incident and was therefore eligible for qualified immunity, which meant that Reilly's Section 1983 claim against Officer Cruz failed. *Id*. at 512a-15a. The court further explained that Reilly's claim against UMPD depended on his claim against Officer Cruz and could not survive the failure of that claim. *Id*. at 515a-17a. The court added that Reilly also failed to present any evidence that UMPD failed to properly train its police officers or did so with deliberate indifference to the constitutional rights of individuals. *Id*. at 517a. Based on its evaluation, the trial court recommended that its November 2023 order be reversed. *Id*. at 518a.

In *Grobelny v. Cityview Condominium Association, Inc.* (Pa. Cmwlth. No. 1471 C.D. 2023, filed January 6, 2025), 2025 WL 33122 (unpublished),[5] the trial court granted the defendant's motion for summary judgment, then stated in its Rule 1925(a) opinion that it erred because genuine issues of material fact remained. *Id*., slip op. at 2. This Court agreed, vacated the trial court's order, and remanded for further proceedings. *Id*., slip op. at 4-5.

---

[5] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

In *MNC Corp. v. Mount Lebanon Medical Center, Inc.*, 440 A.2d 528 (Pa. Super. 1982),[6] the trial court issued an order denying the appellant's petition to open judgment. *Id*. at 529. When the trial court wrote its Rule 1925(a) opinion, it concluded that it had erred but no longer had jurisdiction to correct its mistake. *Id*. The Superior Court acknowledged the trial court's admission of error, vacated the order, and remanded the matter to the trial court "to reconsider its order based upon its Rule 1925 opinion." *Id*.

In *Grobelny*, this Court explained the rationale behind such remands as follows:

> Remand requests are commonly honored by Pennsylvania appellate courts. *See Commonwealth v. Vasquez*, . . . 744 A.2d 1280 (Pa. 2000) (concluding that the Superior Court did not err in remanding upon a request of the trial court based on the determination that the original sentence was illegal due to the trial court's omission of a mandatory fine); *Jackson Twp. Supervisors v. Est. of Gresh* (Pa. Cmwlth., No. 1970 C.D. 2014, filed July 9, 2015) (vacating and remanding for full evidentiary hearing on trial court's request and conclusion that evidentiary hearing was required); *Kelso Woods Ass'n v. Swanson*, 753 A.2d 894 (Pa. Cmwlth. 2000) (vacating and remanding for calculation of damages upon request by the trial court, which indicated it had erred in making part of its determination).

*Grobelny*, slip op. at 2 (quotation marks and additional citation omitted). Here, although the trial court requested that we reverse its order, that disposition would effectively grant Appellants' motion for summary judgment and put Reilly out of court. However, he would be unable to appeal that determination to this Court by right and would have only our Supreme Court's discretionary allocatur process for

---

[6] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

potential redress.  Consistent with *Grobelny* and *MNC Corp.*, and in order to avoid that potential injustice, the fair and proper course of action here is to construe the trial court's request as one for vacatur and remand for the trial court to reconsider its order based upon its Rule 1925(a) opinion.

## IV.  Conclusion

In light of the foregoing, we vacate the trial court's order denying summary judgment and remand this matter to the trial court for reconsideration in accordance with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hugh Reilly                           :
                                       :

v.                         :
                                       :

Upper Moreland Police Department   :
and Layla Cruz,                   :   No. 140 C.D. 2024
                Appellants   :

# **O R D E R**

AND NOW, this 7th day of July, 2025, the November 20, 2023, order of the Court of Common Pleas of Montgomery County is VACATED. This matter is REMANDED for reconsideration in accordance with this opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge